UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ROY NAASZ, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.

FORD MOTOR COMPANY;

        Defendant.

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    Plaintiff Roy Naasz brings this action for himself and on behalf of all persons who purchased or leased in California certain vehicles equipped with uniform and uniformly defective braking systems designed, manufactured, distributed, and sold/leased by Ford Motor Company and/or its related subsidiaries or affiliates ("Ford"), as further described below ("Class Members").

2.    The vehicles at issue in this action include the 2013-2018 Ford F-150 trucks (the "Class Vehicles").

3.    These Class Vehicles' Brake Systems have a serious defect that causes brake fluid to leak from the master cylinder, resulting in a loss of hydraulic pressure and sudden failure of brake function ("Brake System Defect").

4.    On information and belief, the Brake System is substantially the same, from an engineering standpoint, in all Class Vehicles, in that the Brake System in all

Class Vehicles is made up of substantially the same components and employs the same general mechanism to engage the front brakes to slow or stop the vehicle.

5.     The Brake System in the Class Vehicles is defective, upon information and belief, because the master cylinder contains a defective sealing mechanism that is inadequate to prevent brake fluid—which is necessary for operation of the brake—from leaking out of the master cylinder and into the brake booster, even during normal and expected use and conditions, and in other ways to be revealed after discovery is obtained from Defendant and third parties.

6.     The Brake System can first fail at low mileages, within Ford's 36,000 mile "Bumper to Bumper" warranty period.

7.     In May 2016, Ford submitted a manufacturer recall to the National Highway Traffic Safety Administration ("NHTSA") regarding the Brake System Defect (NHTSA Recall No. 16V-345) ("Safety Recall").

8.     The Safety Recall applied only to F-150 vehicles manufactured in the 2013 and 2014 model years with certain engine sizes, despite the fact that all F-150 vehicles from model years 2013-2018 have substantially identical Brake Systems that suffer from the same Defect. For example, in October 2016, six months after Ford issued its recall, NHTSA informed Ford that it was investigating the Brake System in model year 2015 and 2016 F-150s based on 48 complaints from owners

alleging sudden loss of brake effectiveness in those vehicles. Despite this, Ford did not expand the scope of the Recall.

9. Ford has failed to provide a permanent in-warranty fix for the Brake System Defect within a reasonable time, and forced some Class Members to pay out-of-pocket to replace broken Brake Systems with equally defective replacement parts.

10. In those vehicles subject to the Safety Recall, or for vehicles whose Brake Systems fail during the limited warranty period, Ford has simply replaced the defective master cylinder with a new one that suffers from the same Defect. Thus, Ford's replacement of faulty Brake System components with equally defective parts leaves the Brake System susceptible to repeated failure and does not remedy the Defect.

11. Consumers who experience brake failure outside of the warranty period and in vehicles not subject to the Safety Recall are forced to pay out-of-pocket to have the defective components replaced. Replacing the defective parts can cost thousands of dollars.

12. The Brake System Defect inhibits Plaintiff's and Class Members' expected, comfortable, and safe use of their Vehicles, and exposes them to the risk of serious injury resulting from sudden brake failure. The Defect also requires Class Members to pay for equally defective replacement parts that are themselves susceptible to failure.

13.     On information and belief, prior to sale or lease of the Vehicles at issue, Ford knew of the Brake System Defect through sources such as pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Ford, collected by NHTSA's Office of Defect Investigation ("ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Ford dealers; and other internal sources. Yet despite this knowledge, Ford failed to disclose and actively concealed the Brake System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles.

14.     As a result of Ford's alleged misconduct, Plaintiff and Class Members were harmed and suffered actual damages, including that the Class Vehicles contain defective Brake Systems, have manifested, and continue to manifest, the Brake System Defect, and that Ford has not provided a permanent, no-cost remedy for this Defect within a reasonable amount of time. Furthermore, Plaintiff and Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the Brake System Defect.

## PARTIES

*Plaintiff Roy Naasz*

15.     Plaintiff Roy Naasz resides in West Covina, California.

16.    Mr. Naasz owns a 2015 Ford F-150, VIN 1FTEW1EG8FKD36847, which he purchased from the Chino Hills Ford dealership in Chino, California, after leasing it as a new vehicle for a two-year period beginning in approximately June 2015.  Mr. Naasz's Class Vehicle was designed, manufactured, distributed, advertised, marketed, warranted, and certified by Ford.

17.    Mr. Naasz leased and later purchased his Class Vehicle for his personal, family, and household use.

18.    In or around September 2018, Mr. Naasz's Vehicle's Brake System failed. At the time, the Vehicle had approximately 56,860 miles on it. While Mr. Naasz was driving the Vehicle, he attempted to apply the brakes to slow for a freeway off-ramp, but the brake pedal went down to the floor, the brake light came on, and the vehicle had no braking power. Luckily, Mr. Naasz was able to avoid an accident by using the emergency brake to stop the truck.

19.    Mr. Naasz took his Vehicle to Ford of West Covina after he experienced the Brake System failure. The dealership determined there were no leaks on the brake lines or brake calipers and discovered that the brake booster was filled with brake fluid. Accordingly, the dealership removed and replaced the brake master cylinder and the brake booster.

20.     Because his truck was out of warranty, Mr. Naasz had to pay out-of-pocket for the repairs. After a good-customer discount from his dealership, Mr. Naasz paid $1,025.58 out-of-pocket for the repairs.

21.     On information and belief, the replacement brake master cylinder suffers from the same Brake System Defect and will continue to expose Mr. Naasz to a future risk of brake failure.

22.     Mr. Naasz expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that his Vehicle's Brake System would leak brake fluid from the brake master cylinder to the brake booster, causing sudden loss of brake function, nor was he aware from any source prior to purchase of the unexpected and costly repairs he would have to make on his Vehicle's Brake System simply to have it function. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

*Defendant Ford Motor Company*

23.     Defendant Ford Motor Company ("Ford") is a Delaware corporation, which has its principal place of business in the State of Michigan, and is a citizen of the States of Delaware and Michigan.

24.     At all times relevant herein, Defendant Ford engaged in the business of designing, manufacturing, marketing, warranting, distributing, selling, and leasing

automobiles, including the Class Vehicles, in California and throughout the United States.

## JURISDICTION

25.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

26.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and other Class Members are citizens of different states than Defendant.

27.     This Court has personal jurisdiction over Ford because Ford has its principal place of business in this District. Moreover, Ford is authorized to do business in this District and conducts substantial business in this District.

## VENUE

28.     Venue is proper in this District under 28 U.S.C. § 1391 because Ford is deemed to reside in any judicial district in which it is subject to personal jurisdiction. This Court has personal jurisdiction over Ford because Ford has its principal place of business in Michigan and in this District.

29.     Plaintiff's venue declaration pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

## APPLICABLE LAW

30.     Plaintiff and all Class Members purchased or leased their Class Vehicles in California, and seek damages and equitable relief for themselves and all Class Members under California law.

31.     California has a materially greater interest than any other state in enforcing the rights and remedies granted to consumers under the California laws invoked in this Complaint. These rights and remedies further the strong fundamental public policies of the State of California.

## FACTUAL ALLEGATIONS

32.     Plaintiff is informed and believes that, because of the Brake System Defect, the Brake Systems in the Class Vehicles are predisposed to leak brake fluid from the brake master cylinder to the brake booster, resulting in a loss of hydraulic pressure and sudden brake failure under normal-use conditions that would not cause non-defective Brake Systems to fail, compromising the comfort, safety, and enjoyment of Vehicle occupants, including Class Members, and requiring them to pay out-of-pocket to replace broken Brake System parts with equally defective replacement parts, leaving their Brake Systems susceptible to repeated failures.

## I.     The Brake System Defect.

33.     On information and belief, and subject to additional information learned after obtaining discovery from Defendant and third parties, the source of

Brake System Defect in the Class Vehicles lies in the master cylinder, an essential component of the Brake System.

34.    In a non-defective brake system, the master cylinder regulates the amount of brake fluid sent to the brake calipers based on pressure a driver applies to the brake pedal.

35.    Ordinarily, pistons in the master cylinder respond to the pedal by pushing brake fluid toward the calipers. The resulting increase in hydraulic pressure causes pistons in the brake calipers to force brake pads against the rotors of the wheels, which in turn causes the vehicle to slow or stop.

36.    Brake fluid is an essential ingredient of a brake system; without it, the vehicle cannot generate sufficient hydraulic pressure to apply the brakes.

37.    To ensure that brake fluid is able to move from the brake fluid reservoir, through the master cylinder, and into the calipers, it is vital to ensure that the master cylinder is sealed such that brake fluid cannot leak out of the cylinder.

38.    On information and belief, the master cylinder Ford uses in the Class Vehicles is not adequately sealed so as to prevent brake fluid from escaping. As a result, brake fluid is able to escape from the master cylinder and leak into other components, including the brake booster.

39.    When this happens, the Brake System cannot generate enough hydraulic pressure to effectively apply the brakes. The results of this failure can

include the brake pedal depressing to the floor of the vehicle, the brake warning light activating due to the low level of fluid, and the driver experiencing a reduced or total loss of ability to brake the vehicle.

40.    Ford knew or should have known that having an insufficiently sealed master cylinder could lead to leaking of brake fluid and subsequent Brake System failure under normal use and conditions.

41.    The Brake System failure can first occur at low mileages, within the warranty period.

42.    Moreover, Ford's replacement of faulty Brake System components with equally defective replacement parts leaves the Brake System susceptible to repeated failure and thus does not remedy the Brake System Defect.

43.    When Ford refuses to cover the cost to repair the Brake System, consumers are forced to pay thousands of dollars out of pocket, yet the repair is done with the same defective Ford parts, thus consumers still are subjected to future risk of failure.

## II.    The Brake System Defect Poses A Safety Risk to Vehicle Drivers and Occupants.

44.    The Brake System Defect poses a safety risk to Vehicle occupants because a Vehicle with a non-functioning Brake System subjects occupants to the risk that the Brake System will not stop or slow the Vehicle when the driver depresses the brake pedal.

45.     An inoperative or defective Brake System poses a serious risk of injury or death to the occupants of the Vehicle or others.

46.     For example, according to a complaint filed with NHTSA ODI, one consumer experienced sudden brake failure, and as a result "crossed the street, went up the curb, and struck my neighbor's landscape wall, damaging it severely."   A Ford dealer later identified the problem as a defective master cylinder. [1] NHTSA ODI #10809601 (incident date May 1, 2015).

47.     Another consumer reported colliding with an eighteen-wheeler truck after experiencing sudden brake failure. NHTSA ODI #10855278 (incident date January 13, 2015).

48.     As partially detailed below, numerous other reports have been made to NHTSA and reported in the media regarding Brake System failures in Class Vehicles.

### III.   Ford Knew of the Brake System Defect Prior to Sale or Lease of the Class Vehicles.

49.     On information and belief, Ford learned of the Brake System Defect at least as early as 2011, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, through sources such as pre-release

_____

[1] For this and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Ford, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Ford dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

### A.   Ford's Knowledge of the Brake System Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data.

50.   During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Ford necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's Brake Systems, particularly the basic engineering principles behind the construction and function of the systems and the expected conditions and uses the systems would encounter in ordinary use.

51.   An adequate pre-release analysis of the design, engineering, and manufacture of the Brake Systems in the Class Vehicles would have revealed to Ford that the brake master cylinders were defective and susceptible to leaking brake fluid and failing to provide adequate braking ability for the Vehicles.

### B.   Ford's Knowledge of the Brake System Defect from Repair Data.

52.   Ford also knew or should have known about the Brake System Defect because of the large number of claims for Brake System repairs and part replacements made during the Class Vehicles' warranty periods.

53.    Consumers complain that the Brake System Defect often causes Brake System failures at low mileages, within the warranty period.

54.    Upon information and belief, Ford collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Ford's control and unavailable to Plaintiff without discovery.

C.    **Ford's Knowledge of the Brake System Defect Gathered from the Large Number of Replacement Brake System Parts Ordered from Ford.**

55.    Upon information and belief, Ford also knew or should have known about the Brake System Defect because of the higher than expected number of replacement Brake System parts ordered from Ford, which should have alerted Ford that this was a defect affecting a wide range of its Vehicles.

56.    Upon information and belief, Ford service centers use Ford replacement parts that they order directly from Ford. Independent repair shops and consumers doing repairs themselves also purchase replacement parts directly from Ford. Therefore, Ford would have detailed and accurate data regarding the number and frequency of replacement part orders. The ongoing high sales of replacement Brake System parts was certainly known to Ford, and should have alerted Ford that its

master cylinder components were defective and causing Class Vehicles' Brake Systems to fail.

**D.      Ford's Knowledge of the Brake System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations.**

57.     Many Class Vehicle owners and lessees lodged complaints about the Brake System Defect with NHTSA ODI.

58.     Federal law requires automakers like Ford to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

59.     Thus, automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, such as failures of Brake Systems to apply the brakes as intended.

60.     From its monitoring of the NHTSA databases, Ford knew or should have known of the many complaints about Brake System Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Ford to the Brake System Defect.

61.     A sampling of the publicly available complaints lodged with NHTSA ODI includes the following:

"I was driving on the freeway at 65 miles per hour when I had a sudden warming light flash saying brake fluid problem. I tested the brakes and they went to the floor. Total brake failure with no warning. The truck has 29,000 miles and was serviced within last 2 months. This could have very bad and had tragic consequences. I fortunately was able to down shift using the manual shift feature and slow down and stop safely. This is a serious issue. My family and I could have been in a serious accident and hurt ourselves or others. Ford needs to get this figured out asap. Call me with any questions." NHTSA ODI #11003801 (incident date July 7, 2017)

"I drove the vehicle to the store this morning and there was no problem with the brakes. When I left the store and started the vehicle I got a message that said brake fluid is low and when I pressed the brake it went straight to the floor with no resistance. I had to pump the brakes several times to stop the vehicle from moving as I was attempting to back out of a parking space. I got it to stop however when I pressed the brake again it went straight to the floor again. I then turned the vehicle off and called for roadside assistance. The vehicle was towed to the dealership (it only has 11000 miles on it) and they advised me that the master cylinder was defective and was leaking fluid into the brake booster." NHTSA ODI #10881311 (incident date June 28, 2016)

"Complete brake failure. Brake fluid low level light illuminated while driving a very busy road and within 2 minutes the master cylinder had depleted all fluid and brake pedal was going all the way to floor board. Luckily the wife was able to get the truck into a parking lot unscathed. Truck has been at dealer for a week due to master cylinder being on backorder. Apparently the issue affecting 2013-2014 f-150s is also affecting 2015s as well. Truck has approx. 15k miles." NHTSA ODI #10881590 (incident date June 22, 2016)

"While driving on the interstate a warning for low brake fluid appeared on the dash. Shortly after I lost pressure in the brake pedal when trying to brake for slower traffic. I was able to pump the brakes to slow down enough and was able to get to a near by gas station. Their was no brake fluid left in the reservoir and after adding more brake fluid the reservoir drained within 5 minutes with no visible leak. The vehicle was towed to the dealership. The brake master cylinder had failed and drained all the brake fluid into the vacuum booster. I was lucky that I enough room to pump my brakes to gain control, otherwise this could have resulted in a major accident. This part should not fail in this manner nor at 18000 mile of vehicle life. The mechanic at the dealership claimed he has seen this issues on other f150s too." NHTSA ODI #10725476 (incident date June 6, 2015)

"On 5/1/15, while backing out of my driveway, as I attempted to brake, the brake pedal went completely to the floor, and there was no stopping power. While attempting to pump the brake and use the parking brake, my vehicle crossed the street, went up the curb, and struck my neighbor's landscape wall, damaging it severely. Total distance travelled was approximately 2.5 truck lengths before impacting the neighbor's wall. Upon inspection by myself and later my insurance investigator, the brake fluid reservoir was empty, but there were no obvious signs of leakage. No puddles or visible brake fluid. Truck was towed to local dealer who diagnosed the problem as 'brake failure due to leak faulty brake master cylinder'. Within a few days, the brakes again did not feel right with a strange pedal feel. Gradually, the worsening pedal feel was accompanied by a metallic scraping or grinding noise. A second trip to a dealer revealed a failed brake booster due to brake fluid ingestion, which also explained why there was no visible evidence of a leak after the crash. The brake booster operates at a vacuum, so as the master cylinder leaked catastrophically, the booster sucked in the fluid, causing it to ultimately fail as well. Both the brake master cylinder and the brake booster were replaced under

warranty. I am surprised that there as been no action on this issue yet - the complete failure of the most important safety system of a 2.5+ ton vehicle - as there are numerous nearly identical failure modes with this model and year. I truly hope nobody is killed by this; it was truly terrifying to be without brakes while moving in reverse in a massive vehicle." NHTSA ODI #10809601 (incident date May 1, 2015)

62.     As the above sampling of complaints makes clear, consumers have been vocal in complaining to NHTSA ODI about the Brake System Defect and Ford was, or should have been, aware of and monitoring those complaints, and should have known about the Brake System Defect.

63.     In sum, as early as 2011, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, Ford was aware of the Brake System Defect, should have been aware of the Brake System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the Brake System Defect, based on, among others, the following sources:

   a.     Pre-release design, manufacturing, engineering, and testing data;

   b.     Detailed data gathered by Ford about large number of Brake System Defect repairs;

   c.     Knowledge Ford had of the large number of replacement Brake System parts ordered from Ford;

   d.     Numerous and consistent consumer complaints made directly to Ford about the Brake System Defect;

e.    Numerous and consistent consumer complaints collected by NHTSA ODI about the Brake System Defect;

f.    Ford service center employees' familiarity with and knowledge of the Brake System Defect.

64.    Moreover, the large number and consistency of Class Member complaints describing the Brake System's propensity to leak brake fluid, lose hydraulic pressure, and experience brake failure underscores the fact that Class Members considered the Brake System Defect to be a material safety issue to the reasonable consumer.

**IV.    Ford Received Pre-Suit Notice Multiple Times and Ways.**

65.    In addition to other forms of notice, including those detailed in this Complaint, Ford was put on notice of Mr. Naasz's claims in September 2018 when Mr. Naasz took his Vehicle to his dealership, Ford of West Covina, to report his Vehicle's Brake System failure.

66.    Ford also received pre-suit notice of its violations alleged in this Complaint via a letter sent to Ford and its registered service agent on September 28, 2018, on behalf of Plaintiff Roy Naasz and all others similarly situated.

**V.    Applicable Warranties**

67.    Ford sold and leased the Class Vehicles with a written express warranty covering the Vehicles for three years or 36,000 miles, whichever comes first.

68.    Ford's New Vehicle Limited Warranty expressly states that Ford will "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" so long the Vehicle is properly operated and maintained and taken to a Ford dealership for repair within the warranty period.

69.    For certified pre-owned ("CPO") Vehicles, Ford offers a limited warranty covering CPO Vehicles for 12 months or 12,000 miles, whichever comes first.

70.    Ford's CPO Vehicle warranty states that a dealer will replace "all covered components . . . that are found to be defective in factory-supplied materials or workmanship during the applicable warranty periods." The brake master cylinder and other Brake System components are included in Ford's list of "covered components."

71.    Ford provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

72.    Ford also sells replacement parts, including Brake System components, through its Motorcraft parts brand.

73.     Ford provides an express written warranty with all new Ford and Motorcraft replacement parts. That warranty provides that for parts sold on or after October 1, 2013, parts found to be defective in factory-supplied material or workmanship will be repaired, replaced, or exchanged within 24 months of part purchase, regardless of the number of miles driven.

## VI.    Ford's Safety Recall

74.     In May 2016, Ford issued Safety Recall 16V-345 (Manufacturer Recall No. 16S24) relating to the Brake System Defect. The Safety Recall does not include all Class Vehicles, does not adequately make Plaintiff and Class Members whole, and does not permanently remedy the Defect.

75.     The Safety Recall applied to "[c]ertain 2013-204 model year Ford F-150 vehicles equipped with 3.5L engines" and was estimated to affect more than 225,000 trucks.

76.     The Safety Recall notice explained that affected Vehicles could "experience a loss of brake fluid from the brake master cylinder reservoir into the brake booster," which could result in, among other things, "an audible chime, message center alert, . . . a change in brake pedal travel and feel[,] . . . longer pedal travel, increased pedal effort, and extended stopping distance, increasing the risk of a crash."

77.     Ford's proposed Recall remedy included instructing owners to take their Vehicles to a Ford or Lincoln dealership so that the brake master cylinder could be replaced (as well as the brake booster if leaking had occurred).

78.     The scope of the recall was inadequate because the Brake System Defect affects far more Vehicles than those included in the Safety Recall.

79.     In fact, in October 2016, NHTSA contacted Ford to explain that it had received dozens of reports alleging the Brake System Defect in model year 2015 and 2016 Vehicles, including several reports in which brake failure resulted in a vehicle crash.

80.     Despite this inquiry, Ford refused to expand the scope of the Safety Recall or issue a new recall.

81.     Nothing in the terms of the Safety Recall indicate that Ford intends to reimburse Plaintiff and Class Members for the past costs incurred for the replacement of defective Brake Systems or for replacement of defective Brake Systems in Class Vehicles not included in the limited recall. For example, Mr. Naasz's Vehicle, a 2015 Ford F-150, was not covered by the Safety Recall despite suffering from the same Brake System Defect as the Vehicles included in the recall.

82.     Moreover, upon information and belief, the replacement master brake cylinder installed in recalled Vehicles is substantially identical to the original

component, contains the same Brake System Defect, and subjects consumers to the same risk of future Brake System failure and subsequent costs and repairs.

83.     In short, as the Safety Recall notice makes clear, Ford's recall fails to fix the underlying problem and falls far short of fully compensating Plaintiff and Class Members for the harm caused by the defective Class Vehicles.

## VII.  Ford's Marketing and Concealment

84.     Upon information and belief, Ford knowingly marketed and sold/leased the Class Vehicles with the Brake System Defect, while willfully concealing the true inferior quality and substandard performance of the Class Vehicles' Brake Systems.

85.     Ford directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

86.     Ford's marketing material describes the Class Vehicles as "tough" and meeting "rigorous Ford standards for quality, durability and dependability."

87.     In practice, the Class Vehicles are not as tough, durable, and dependable as Ford's marketing suggests. Ford concealed the fact that the Class Vehicles are equipped with defective Brake Systems that leak brake fluid, lose hydraulic pressure, and experience sudden and unexpected brake failure.

88.     Plaintiff and Class Members were exposed to Ford's long-term, national, multimedia marketing campaign touting the supposed quality, safety, and

comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class Vehicles based on Ford's misleading marketing that concealed the true, defective nature of the Class Vehicles.

89.    Further, Ford knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Ford has been aware of the Brake System Defect since at least 2011, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, through pre-release evaluation and testing; the high number of Brake System repairs and replacement part sales; and the numerous and consistent complaints about the Brake System Defect collected by NHTSA.

90.    In sum, Ford has actively concealed the existence and nature of the Brake System Defect from Class Members since at least 2011 despite its knowledge of the existence and pervasiveness of the Brake System Defect. Specifically, Ford has:

   a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Brake System Defect;

   b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' Brake Systems were defective and not fit for their intended purposes;

c.      Failed to disclose, and actively concealed, the fact that the Class Vehicles' Brake Systems were defective, despite that Ford learned of the Brake System Defect as early as 2011, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles;

d.      Failed to disclose, and actively concealed, the existence and pervasiveness of the Brake System Defect even when directly asked about it by Class Members during communications with Ford, Ford dealerships, and Ford service centers;

e.      Actively concealed the Brake System Defect by forcing Class Members to bear the cost of temporary "fixes" that merely replaced the defective brake master cylinder with another defective part.

91.     By engaging in the conduct described above, Ford has concealed, and continues to conceal, the Brake System Defect from Class Members. If Class Members had had knowledge of the information Ford concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

## FRAUDULENT CONCEALMENT ALLEGATIONS

92.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Ford responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. Ford necessarily is in possession of all of this

information. Plaintiff's claims arise out of Ford's fraudulent concealment of the Brake System Defect, and its representations about the quality, safety, and comfort of the Class Vehicles. To the extent that Plaintiff's claims arise from Ford's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.

93.    Plaintiff alleges that at all relevant times, including specifically at the time he and other Class Members purchased or leased their Class Vehicles, Ford knew, or was reckless in not knowing, of the Brake System Defect; Ford was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and Ford never disclosed the Defect to Plaintiff or the public at any time or place or in any manner other than a halfhearted, inadequate recall of a small subset of the Class Vehicles.

94.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Ford:

a.    ***Who***:  Ford actively concealed the Brake System Defect from Plaintiff and Class Members while simultaneously touting the safety, comfort, and quality of the Class Vehicles, as alleged in paragraphs 84–91, above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Ford responsible for such decisions.

b.    ***What***:  Ford knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Brake System Defect, as alleged above in paragraphs 49–66. Ford concealed the Defect and made representations about the safety, comfort, world-class quality, and other attributes of the Class Vehicles, as specified above in paragraphs 84–91.

c.    ***When***:  Ford concealed material information regarding the Defect at all times and made representations about the quality, safety, and comfort of the Class Vehicles, starting no later than 2011, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 84–91. Ford still has not disclosed the truth about the full scope of the Defect in the Class Vehicles to anyone outside of Ford. Ford has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their Vehicles to Ford complaining of the Brake System failures, Ford denied any knowledge of or responsibility for the Brake System Defect.

d.    ***Where***:  Ford concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing,

in which Ford disclosed the truth about the full scope of the Defect in the Class Vehicles to anyone outside of Ford. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Ford's website.

e.    **How**:  Ford concealed the Brake System Defect from Plaintiff and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Ford actively concealed the truth about the existence, scope, and nature of the Defect from Plaintiff and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Ford promised in its marketing materials that Class Vehicles have qualities that they do not have.

f.    **Why**:  Ford actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality, safety, and comfort of the Class Vehicles. Had Ford disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would have paid less for them.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

### **Fraudulent Concealment Tolling**

95.    Upon information and belief, Ford has known of the Brake System Defect in the Class Vehicles since at least 2011, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, and yet has concealed from or failed to notify Plaintiff, Class Members, and the public of the full and complete nature of the Brake System Defect. Ford continues to conceal the scope and extent of the Defect to this day, as detailed above.

96.    Any applicable statute of limitations has been tolled by Ford's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### **Estoppel**

97.    Ford was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Vehicles. Ford actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Plaintiff and Class Members reasonably relied upon Ford's knowing representations and active concealment of these facts. Based on the foregoing, Ford is estopped from relying on any statutes of limitations in defense of this action.

## **Discovery Rule**

98.     The causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that their Class Vehicles contained the Brake System Defect.

99.     Plaintiff and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the Brake System Defect caused their Brake Systems to leak brake fluid, lose hydraulic pressure, and fail to function. Even then, Plaintiff and Class Members had no reason to know the Brake System failures were caused by a defect in the Class Vehicles because of Ford's active concealment of the Brake System Defect.

100.   Plaintiff and Class Members were not reasonably able to discover the Brake System Defect until after they had purchased or leased their Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the Brake System Defect caused their Vehicles' Brake Systems to leak brake fluid, lose hydraulic pressure, and fail to function.

## **CLASS ACTION ALLEGATIONS**

101.   Plaintiff brings this lawsuit as a class action on behalf of himself and all other Class Members similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

102.   Plaintiff brings this class action, including all causes of action stated below, on behalf of himself and all other similarly situated members of the proposed Class (referred to herein as "Class Members"), defined as follows:

> All persons who purchased or leased a Class Vehicle in California. A "Class Vehicle" is any Ford F-150 from model years 2013-2018.

103.   Plaintiffs will seek certification of a "Damages Subclass" under 23(b)(3) for all Class Members who have experienced Brake System failures, and an "Owner Subclass" under Rule 23(b)(2) for purposes of declaratory relief as to future Brake System failures.

104.   Excluded from the proposed Class are: (1) Ford, any entity or division in which Ford has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

## Numerosity

105.   Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Ford's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

## Typicality

106.   The claims of Plaintiff are typical of the claims of Class Members in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, warranted, sold/leased, and serviced by Ford. Plaintiff, like all Class Members, has been damaged by Ford's misconduct in that he purchased/leased a Vehicle he would not have purchased/leased, or would not have purchased/leased at the price paid, and incurred or will incur the cost of repairs relating to and caused by the Brake System Defect. Furthermore, the factual bases of Ford's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

## **Adequate Representation**

107.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective vehicles.

108.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class Members and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of Class Members.

## **Predominance of Common Issues**

109.    There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.    whether the Brake System in the Class Vehicles is defective;

b.    whether Ford knew or should have known about the Brake System Defect, and, if yes, how long Ford has known of the Defect;

c.    whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.    whether Ford had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class Members;

e.     whether Ford omitted and failed to disclose material facts about the Class Vehicles;

f.     whether Ford's concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing or leasing Class Vehicles;

g.     whether Ford's representations and omissions about the true defective nature of the Class Vehicles were likely to mislead or deceive, and therefore fraudulent, within the meaning of California's Unfair Competition Law ("UCL");

h.     whether Ford's representations and omissions about the true defective nature of the Class Vehicles were and are unfair within the meaning of the UCL;

i.     whether Ford represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have;

j.     whether Ford represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

k.     whether Ford advertised the Class Vehicles with the intent not to sell/lease them as advertised;

l.      whether Ford's representations and omissions about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding;

m.      whether Ford's representations and omissions about the true defective nature of the Class Vehicles were and are deceptive;

n.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

o.      whether Plaintiff and the other Class Members are entitled to a declaratory judgment stating that the Brake Systems in Class Vehicles are defective and/or not merchantable;

p.      whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

q.      whether Ford should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Brake System Defect in the Class Vehicles; and

r.      whether Ford is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective Brake Systems.

**Superiority**

110.   Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Ford's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class Members will continue to incur damages, and Ford's misconduct will continue without remedy.

112.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumer Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750, et seq.)**

113.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

114.   Plaintiff brings this cause of action for himself and on behalf of Class Members.

115.   Ford is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

116.   Plaintiff and Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

117.   The purchases and leases of Class Vehicles by Plaintiff and Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

118.   The Class Vehicles constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

119.   Plaintiff and Class Members purchased or leased the Class Vehicles primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

120.   Ford's representations, active concealment, failures to disclose, and omissions regarding the Class Vehicles violated the CLRA in the following ways:

a.    Ford misrepresented that the Class Vehicles had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    Ford misrepresented that the Class Vehicles were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.      Ford advertised the Class Vehicles with an intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

d.      Ford misrepresented that the Class Vehicles and the warranties conferred or involved rights, remedies, or obligations that they did not (Cal. Civ. Code § 1770(a)(14)); and

e.      Ford misrepresented that the Class Vehicles were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

121.   Ford's unfair and deceptive acts or practices occurred repeatedly in Ford's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to purchasers and lessees of the Class Vehicles.

122.   Ford knew, by 2011 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Brake Systems suffered from an inherent defect, were defectively designed or manufactured, would fail repeatedly, and were not suitable for their intended use.

123.   By 2011 at the latest, Ford had exclusive knowledge of material facts concerning the existence of the Brake System Defect in its Class Vehicles. Furthermore, Ford actively concealed the Defect from consumers by denying the existence and scope of the Defect to Class Members who contacted Ford about their

Brake System failures, failing to provide a permanent remedy for the Brake System Defect within a reasonable time under warranty, and replacing defect Brake System components with the same defective replacement parts.

124.   Ford was under a duty to Plaintiff and Class Members to disclose the defective nature of the Brake Systems, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the failures caused by the Brake System Defect, because:

a.   Ford was in a superior position to know the true state of facts about the Brake System Defect in the Class Vehicles;

b.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Brake System Defect until, at the earliest, the manifestation of the Defect; and

c.   Ford knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Brake System Defect prior to its manifestation.

125.   In failing to disclose the defective nature of the Class Vehicles, Ford knowingly and intentionally concealed material facts and breached its duty not to do so.

126.   The facts concealed or not disclosed by Ford to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to

be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the Brake System Defect to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiff and other Class Members known that the Class Vehicles had the Brake System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

127.   Plaintiff and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective Brake System. It is a reasonable and objective consumer expectation for consumers to expect the Brake System not to leak brake fluid, lose hydraulic pressure, and fail to function.

128.   As a result of Ford's misconduct, Plaintiff and Class Members have been harmed in that the Class Vehicles contain defective Brake Systems and repeatedly leak brake fluid, lose hydraulic pressure, and fail to function due to the Brake System Defect, creating a grave risk of serious injury to person and property and causing Class Members to spend money to attempt to remedy the Defect.

129.   As a direct and proximate result of Ford's unfair or deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer harm in that they have a Vehicle with a defective Brake System and they have experienced and may continue to experience their Class Vehicles' Brake Systems leaking brake fluid, losing hydraulic pressure, and failing to function, for which there is no permanent fix.

130.   Plaintiff and the Class seek an order enjoining Ford's unfair or deceptive acts or practices and equitable relief under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

131.   In accordance with section 1782(a) of the CLRA, Plaintiff's counsel, on behalf of Plaintiff, has served Ford with notice of its alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by Plaintiff and Class Members, and demanded that Ford, within thirty (30) days of such notice, corrects or agrees to correct the actions described therein and agrees to reimburse Plaintiff's and Class Members' associated out-of-pocket costs. If Ford fails to do so, Plaintiff will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to seek compensatory and monetary damages and attorneys' fees to which Plaintiff and Class Members are entitled under the CLRA.

## **SECOND CAUSE OF ACTION**

### **(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.)**

132.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

133.   Plaintiff brings this cause of action for himself and on behalf of Class Members.

134.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or

practice" and "unfair, deceptive, untrue or misleading advertising." Ford engaged in conduct that violated each of this statute's three prongs.

135.   Ford committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

136.   Ford committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., because the acts and practices described herein, including but not limited to Ford's failure to provide a permanent remedy to fix the Brake System Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. Ford's acts and practices were additionally unfair because the harm to Plaintiff and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Ford's acts and practices were unfair in that they were contrary to legislatively declared or public policy.

137.   Ford committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it concealed the existence and nature of the Brake System Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles were "tough," had met "rigorous" standards assuring "quality, durability, and dependability,"

when, in fact, they are not. Ford's representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

138.   Ford's unfair or deceptive acts or practices occurred repeatedly in the course of Ford's trade or business, and were likely to mislead a substantial portion of the purchasing public.

139.   Plaintiff relied on Ford's material representations and nondisclosures, and would not have purchased/leased, or would have paid less for, the Class Vehicles had he known the truth.

140.   As a direct and proximate result of Ford's unfair, unlawful, and deceptive practices, Plaintiff has lost money.

141.   Plaintiff and Class Members seek an order enjoining Ford from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

### THIRD CAUSE OF ACTION

**(Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)**

142.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

143.   Ford's Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

144.   Ford is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

145.   Plaintiff and Class Members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

146.   Ford impliedly warranted to Plaintiff and Class Members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

147.   Ford impliedly warranted to Plaintiff and Class Members that it would repair or replace any defective products, including the defective Brake System.

148.   The propensity of the Brake System Defect to cause the Brake System to leak brake fluid, lose hydraulic pressure, and fail to function renders the Class Vehicles to not be of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

149.   The Brake System Defect is latent and was present at the time of sale/lease, and therefore the Vehicles were not merchantable at the time of sale/lease.

150.   The Class Vehicles do not conform to the promises or affirmations of fact made by Ford in its promotional materials and vehicle owner manuals in that the Brake System Defect creates a driving experience in the Class Vehicles that does not reflect "rigorous" standards of "quality, durability and dependability."

151.   In violation of Cal. Civ. Code § 1791.1(a), Ford breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to permanently replace and/or repair the defective Brake Systems.

152.   The Brake System Defect has deprived Plaintiff and Class Members of the benefit of their bargain, and has caused the Class Vehicles to depreciate in value.

153.   Any attempt by Ford to limit or disclaim the implied warranties in a manner that would exclude coverage of the Brake System Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

154.   As a result of Ford's breach of its implied warranties, Plaintiff and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty)

155.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

156.   The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

157.   Ford is and was at all relevant times a "merchant" with respect to the Class Vehicles, under, inter alia, Cal. Com. Code §§ 2104(1) and 10103(c), and a

"seller" of the Class Vehicles, under § 2103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles, under, inter alia, Cal. Com. Code § 10103(a)(16).

158.   Plaintiff and Class Members are "buyers" or "lessees" within the meaning of, inter alia, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

159.   When it sold or leased its Class Vehicles, Ford extended an implied warranty to Class Members that the subject Vehicles were merchantable and fit for the ordinary purpose for which they were sold or leased, pursuant to Cal. Com. Code §§ 2314, 10212, and 10214.

160.   Plaintiff and other Class Members who purchased or leased a Class Vehicle directly from Ford are entitled to the benefit of their bargain: a Vehicle with a nondefective Brake System that does not leak brake fluid, lose hydraulic pressure, or fail to function.

161.   Likewise, Plaintiff and other Class Members who purchased or leased a Ford Certified Pre-Owned Class Vehicle are entitled to the benefit of their bargain: a vehicle with a nondefective Brake System that does not leak brake fluid, lose hydraulic pressure, or fail to function.

162.   Class Members who purchased Certified Pre-Owned Class Vehicles are the intended ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries for the purposes of their implied warranty claims.

163.   Ford breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

164.   The Brake System Defect is latent and was present at the time of sale/lease, and therefore the Vehicles were not merchantable at the time of sale/lease.

165.   Had the brake System Defect that existed at the time of sale been known, the Class Vehicles could not have been sold or leased, or could not have been sold or leased at the same price.

166.   As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## **FIFTH CAUSE OF ACTION**
### **(Breach of Implied Warranty – Magnuson-Moss Warranty Act)**

167.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

168.   Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

169.   Defendant Ford is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

170.   The subject Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

171. Ford extended an implied warranty to Plaintiff and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' Brake Systems.

172. Ford breached this implied warranty by selling/leasing its Class Vehicles with defective Brake Systems that were neither merchantable nor fit for their intended purpose.

173. The Brake System Defect is latent and was present at the time of sale/lease, and therefore the Vehicles were not merchantable at the time of sale/lease.

174. Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff has been appointed Class Representative; nevertheless Ford was notified of its breach of warranty, as alleged above.

175. Upon information and belief, the number of class members in this action will be greater than 100, and the amount in controversy to be determined by all claims in this action exceeds $50,000. 15 U.S.C. §§ 2310(d)(3)(B)-(C).

176. As a direct and proximate result of Ford's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff, and the Class, have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Fraud by Concealment)

177.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

178.   Plaintiff brings this cause of action for himself and on behalf of Class Members.

179.   Ford concealed and suppressed material facts concerning the quality of the Class Vehicles, and the Brake Systems in the Class Vehicles.

180.   Ford concealed and suppressed material facts concerning the serious Defect causing Class Vehicles' Brake Systems to leak brake fluid, lose hydraulic pressure, and fail to function. Upon information and belief, the Defect lies in the Brake System components located within the engine compartment of the Class Vehicles. Ford knew that Plaintiff and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the Vehicles. Ford further failed to disclose and/or denied the existence the Defect when Plaintiff and Class Members complained of their Brake System's failure.

181.   Ford did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Ford vehicles that the Class Vehicles were world-class, safe, warranted, and reliable vehicles, and concealed the information in order to prevent harm to Ford and its products' reputations in the marketplace and to

prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease.

182.   These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in Plaintiff's and Class Members' decisions to purchase or lease the Class Vehicles.

183.   Ford had a duty to disclose the Brake System Defect in the Class Vehicles because it was known and/or accessible only to Ford; Ford had superior knowledge and access to the facts; and Ford knew the facts were not known to or reasonably discoverable by Plaintiff and Class Members.

184.   Ford also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability.

185.   Even when faced with complaints regarding the Defect, Ford misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at the time of purchase or lease and again when the Brake System failure was complained of to Ford.

186.   The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiff and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased/leased, are material concerns to a consumer.

187.   Ford actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would hurt the brand's image and cost money, and it did so at the expense of Plaintiff and Class Members.

188.   On information and belief, Ford has still not made full and adequate disclosure and continues to defraud Plaintiff and Class Members and conceal material information regarding defects that exist in Ford vehicles.

189.   Plaintiff and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased their Class Vehicles or would have paid less for them. Plaintiff's and Class Members' actions were justified. Ford was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class Members.

190.   Because of the concealment and/or suppression of the facts, Plaintiff and Class Members sustained damages because they negotiated and paid value for

the Class Vehicles not considerate of the Brake System Defect that Ford failed to disclose, and they paid for temporary repairs and equally defective replacement parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiff and Class Members would have paid less for their Vehicles or would not have purchased or leased them at all.

191.   Accordingly, Ford is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

192.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

193.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

194.   Ford has been unjustly enriched by Plaintiff and Class Members purchasing/leasing Class Vehicles from Ford and purchasing replacement parts and services from Ford that Plaintiff and Class Members would not have

purchased/leased but for Ford's misconduct alleged above with respect to the Brake System Defect.

195.   Plaintiff and Class Members unknowingly conferred a benefit on Ford of which Ford had knowledge, since Ford was aware of the defective nature of the Class Vehicles' Brake Systems, but failed to disclose this knowledge and misled Plaintiff and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

196.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Ford to retain the benefit of profits that it unfairly obtained from Plaintiff and Class Members. These profits include the premium price Plaintiff and the Class paid for the Class Vehicles and the cost of the parts and services bought from Ford to temporarily fix the Brake System.

197.   Plaintiff and Class Members, having been damaged by Ford's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Ford to their detriment.

## **RELIEF REQUESTED**

198.   Plaintiff, on behalf of himself, and all others similarly situated, request the Court to enter judgment against Ford, as follows:

a.     an order certifying the proposed Class and any appropriate subclasses, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.     a declaration that the Brake Systems in the Class Vehicles are defective;

c.     a declaration that Ford is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

d.     an order enjoining Ford from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles;

e.     an order requiring Ford to permanently repair the Class Vehicles, within a reasonable time period and at no cost to Class Members, so that they no longer possess the Brake System Defect;

f.     an award to Plaintiff and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

g.     a declaration that Ford must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

h.     an award of attorneys' fees and costs, under Cal. Code Civ. Proc. § 1021.5, 15 U.S.C. § 2310(d)(1), and as otherwise allowed by law;

       i.     an award of pre-judgment and post-judgment interest, as provided by law;

       j.     leave to amend this Complaint to conform to the evidence produced at trial; and

       k.     such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

199.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  October 10, 2018          Respectfully submitted,


By:  */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
ssa@millerlawpc.com
epm@millerlawpc.com
dal@millerlawpc.com

Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP 222 2nd Ave S, Suite 1640
Nashville, TN  37201-2379
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965
mchalos@lchb.com


Jonathan D. Selbin
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
jselbin@lchb.com
akmartin@lchb.com

Evan J. Ballan
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
eballan@lchb.com

Patrick Newsom
BRUNO NEWSOM PLLC
40 Music Square E.
Nashville, TN 37203
Telephone: (615) 251-9500
Facsimile: (615) 345-4188
patrick@brunonewsom.com

*Attorneys for Plaintiff and the proposed Class*